UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

FILED
CLERK, U.S. DISTRICT COURT
JAN 29 2018
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

John A. Olagues, Pro Se
A shareholder of Cherokee Inc.

Plaintiffs

Private Right of Action
Under Section 16 b of the
Securities Act of 1934
CIVIL ACTION CV 17-938- DMG

Versus

Jess M. Ravich, Director of Cherokee Inc.
And Cherokee Inc.

Defendants

**Motion for Relief under FRCP 60 (b)(1) to Amend Judgment of January 5, 2018 and allow plaintiff as a shareholder to enforce section 16 (b) of the 1934 Act.**

The court Dismissed without prejudice the 16 (b) Suit Olagues v. Ravich stating that Olagues is not allowed to proceed without an attorney. Olagues believes he should be allowed to proceed Pro se.

1. The Securities Exchange Commission stated in a Release that a suit under Section 16 (b) of the 1934 Securities Exchange Act is a private right of action . See **Exhibit 1** pagers 1-3 of the Release and Arnold Jacobs, the foremost expert in the United States agrees with the SEC.

2. Attached is the Biography of Arnold S. Jacobs, the foremost expert on the issue before this Court here: See **Exhibit 2.** Attached are parts of Jacobs 2017 Edition of SECTION 16 OF THE SECURITIES ACT, pages 336, 591,593,594,595 See **Exhibit 3**

3. Both the SEC and Arnold Jacobs state that a suit to enforce section 16 (b) of the 1934 Securities Exchange Act is a Private Right of Action not a derivative action.

Below are paragraphs from pages 1-3 of the

**Securities Exchange Commission**

**17 CFR Parts 228,229,and 240 Release NOS 33-8600; 34-52202; 35-28013; IC 27025; File No. S7-27-04**

**Page 1**

**OWNERSHIP REPORTS AND TRADING BY OFFICERS, DIRECTORS AND PRINCIPAL SECURITY HOLDERS AGENCY:**

**Securities and Exchange Commission. ACTION: Final rule.**

**SUMMARY:** We are adopting amendments to two rules that exempt certain transactions from the **private right of action** to recover short-swing profit provided by Section 16(b) of the Securities Exchange Act of 1934. The amendments are intended to clarify the exemptive scope of these rules, consistent with statements in previous Commission releases. We also are amending Item 405 of Regulations S-K and S-B to harmonize this item with the two-business day Form 4 due date and mandated electronic filing and Web site posting of Section 16 reports.

**Page 3**

"Section 16(b) provides the issuer (or **shareholders** suing on behalf of the issuer) **a private right of action** to recover from an insider any profit realized by the insider from any purchase and sale (or sale and purchase) of any equity security of the issuer within any period of less than six months. This statute is designed to curb abuses of inside information by insiders. Unlike insider trading prohibitions under general antifraud provisions, Section 16(b) operates without consideration of whether an insider actually was aware of material non-public information. Section 16(b) operates strictly, providing **a private right of action** to recover short-swing profits by insiders, on the theory that short-swing transactions (a purchase and sale within six months) present a sufficient likelihood of involving abuse of inside information that a strict liability prophylactic approach is appropriate." End of SEC paragraph........

A 16(b) suit is a private right of action, as stated by the SEC. This characterization is consistent with section 16(b) and has never been challenged in any court.

Below is a copy of section 16 (b) of the Securities Exchange Act of 1934:

*"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.*

***Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter;*** *but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."*

***End of Section 16 (b).***

The following paragraph from Arnold Jacobs **Exhibit 3** in his SECTION 16 OF THE SECURITIES ACT (2017 ED.) 3.1 AT P. 336 and at at 3.35 at page 592 is below

**"While this cause of action has some attributes of a derivative suit (for instance, a security holder can sue and the recovery flows to the corporation), the cause of action is not derivative at all: rather , it is one possessing an independent statutory origin.**

**Therefore , procedural restrictions on derivative suits do not burden Section 16 (b) actions. We treat later a number of procedural issues relating to the private right of action such as capacity and standing to sue".**

On Pages 594 and 595 of the Jacobs 2017 Edition we find the following:

"Section 16 (b) specifically empowers two plaintiffs to sue. First, it states " Suit to recover such profit may be instituted at law or in equity... by the issuer." This presents no real interpretative problem. **Second, Section 16 (b) provides "Suit to recover such profit may be instituted at law or in equity... by the owner of any security of the issuer"... "The only textual restriction on standing to sue is that the plaintiff must be owner of a security of the issuer at the time the suit is instituted"**

In the case **Schaffer Ex Rel. Lasersight Incorporated v. Cc Investments, Ldc, 286 F. Supp. 2d 279 (S.D.N.Y. 2003),** the court declared that the 16 (b) suit was not a "derivative suit". **See Exhibit 4**. Below is a paragraph from Schaffer Ex Rel:

**"However, although some courts use the term "derivative" to describe § 16(b) lawsuits, under the pure application of the concept, a § 16(b) action is not a derivative action in the way that a typical shareholder derivative action is."**

*See Dottenheim v. Murchison,* 227 F.2d 737, 738 (5th Cir. 1955). Court stated

**"[Section 16(b)] creates a new cause of action, which, while similar in some respects to a secondary or derivative right, is not such a right at all."**

*Blau v. Oppenheim,* 250 F.Supp. 881, (S.D.N.Y.1966) where the court stated below

a. "Just as the Supreme Court has not hesitated to give strained meaning to a word "in the candid service of avoiding a serious constitutional doubt,"so, too, the courts have not hesitated to define words broadly to assure the legislative purpose where otherwise a strict or literal definition would have defeated the purpose. The courts, particularly in our circuit, have consistently interpreted section 16(b) in "the broadest possible" terms in order not to defeat its avowed objective, resolving all doubts and ambiguities against insiders."

b. **"Preliminarily it should be emphasized that strictly speaking a section 16(b) suit to recover short-swing profits is not derivative, although some of the cases so describe it**, but one to enforce a primary right created by the Act in favor of the issuer as well as its security holders. The issuer, by reason of this right of action, is the "instrument, sometimes unwilling," for enforcing the statutory policy. And when the issuer fails to assert the right, the security holder may enforce it."

Also in **Warth v. Seldin 422 U.S. 490 (1975)** *the Supreme Court said*

*"Moreover, Congress may grant an* ***express right of action*** *to persons who otherwise would be barred by prudential standing rules. Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. E.g., United States v. SCRAP, 412 U. S. 669 (1973). But so long as this requirement is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim. E.g., Sierra Club v. Morton, supra at 405 U. S. 737; FCC v. Sanders Radio Station, 309 U. S. 470, 309 U. S. 477 (1940)."*

In **neither** Section 16 (b) of the 1934 Act, **nor** in the SEC expressed statement in the Release NOS 33-8600; 34-52202; 35-28013; IC 27025; File No. S7-27-04 page 3, **nor** in the Arnold Jacobs expressed view, **nor** the several cases in the Schaffer Ex Rel case 286 F.Supp.2d 279 (2003), **nor** in Warth v. Seldin 422 U.S. 490 (1975) is it stated or suggested that the shareholder is required to have an attorney representing him in the Section 16 (b) suit. They all say that a 16 (B) suit is a private right of action not a derivative suit.

And the U.S. Supreme Court decision in Gollust v. Mendell 501 U.S. 115, 122-123 S. Ct 2173 stated :

" **The only textual restriction on standing to sue is that the plaintiff must be owner of a security of the issuer at the time the suit is instituted"**.....To enforce this strict liability rule on insider trading, Congress chose to rely solely on the issuers of stock and their security holders."

"Unlike most of the federal securities laws, 16(b) does not confer enforcement authority on the Securities and Exchange Commission. It is, rather, **the security holders** of an issuer who have the ultimate authority to sue for enforcement of 16(b). If the issuer declines to bring a 16(b) action within 60 days of a demand by a security holder, or fails to prosecute the action "diligently," 15 U.S.C. 78p(b), then the **security holder** may "institut[e]" an action to recover insider short-swing profits for the issuer. Ibid." Gollust v. Mendell 501 U.S. 115, 122-123 S. Ct 2173"

The 16 (b) Statute itself provides that "Suit to recover such profits may be instituted at law or in equity by the owner of any security of the issuer".

Section 16 (b) creates an **express private right of action** and is not a derivative suit as some opinions have referred to a Section 16 (b) suit as a derivative action".

Arnold Jacobs states **" Some opinions refer to a Section 16 (b) lawsuit as a derivative action. But every thoughtful case addressing the issue concludes that a section 16 (b) suit is not a derivative action". See attached the Arnold S. Jacobs 2017 Edition Section 16 of the Securities Act pages 591-595. Exhibit 3**

If Plaintiff hired an attorney to represent him in this **private right of action** section 16 (b) case, the attorney would be representing the Plaintiff, and the Plaintiff's status would not change as the Plaintiff would be merely enforcing Section 16 (b) exactly as what he was doing without an attorney.

The attorney would not be representing the insiders or the issuer. The attorney would be representing the Plaintiff.

**In summary**

**The narrowing of the remedy provided in section 16(b) does not comport with the principle of construction enunciated by the Supreme Court in Reliance Electric Co. v. Emerson Electric Co. 404 U.S. 418, 92 S. Ct. 596, 30 L. Ed. 2d 575 (1972). There, the Court clearly set forth that:**

"In order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration. The objective standard of Section 16 (b) imposes strict liability upon **substantially all transactions occurring within the statutory time period,** regardless of the intent of the insider or the existence of actual speculation. This approach maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof. Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect." Bershad v. McDonough, 428 F.2d 693, 696.

And in the same case **Supreme Court in Reliance Electric Co. v. Emerson Electric Co. 404 U.S. 418, 92 S. Ct. 596, 30 L. Ed. 2d 575 (1972)** , the court said that:

**"To be sure, where alternative constructions of the terms of 16 (b) are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders."**

Respectfully Submitted

Jan 25, 2018

John Olagues
413 Sauve Rd
River Ridge La. 70123
504-305-4071

olagues@gmail.com

# Exhibit 1

SEC Release pages 1-3

SECURITIES AND EXCHANGE COMMISSION

**17 CFR PARTS 228, 229 and 240 [RELEASE NOS. 33-8600; 34-52202; 35-28013; IC-27025; File No. S7-27-04] RIN 3235-AJ27 OWNERSHIP REPORTS AND TRADING BY OFFICERS, DIRECTORS AND PRINCIPAL SECURITY HOLDERS AGENCY:**

Securities and Exchange Commission. ACTION: Final rule. SUMMARY: We are adopting amendments to two rules that exempt certain transactions from the **private right of action** to recover short-swing profit provided by Section 16(b) of the Securities Exchange Act of 1934. The amendments are intended to clarify the exemptive scope of these rules, consistent with statements in previous Commission releases. We also are amending Item 405 of Regulations S-K and S-B to harmonize this item with the two-business day Form 4 due date and mandated electronic filing and Web site posting of Section 16 reports.

EFFECTIVE DATES: August 9, 2005, except §§228.405(a), (a)(2) and (b) and 229.405(a), (a)(2) and (b) are effective September 8, 2005. §240.16b-3(d) and (e) are effective August 9, 2005, but because they clarify regulatory conditions that applied to these exemptions since they became effective on August 15, 1996, they are available to any transaction on or after August 15, 1996 that satisfies the regulatory conditions so clarified. §240.16b-7 is effective August 9, 2005, but because it clarifies regulatory conditions that applied to that exemption since it was amended effective 2 May 1, 1991, it is available to any transaction on or after May 1, 1991 that satisfies the regulatory regulatory conditions so clarified.

FOR FURTHER INFORMATION CONTACT: Anne Krauskopf, Senior Special Counsel, or Nina Mojiri-Azad, Special Counsel, at (202) 551-3500, Division of Corporation Finance, Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549-3010. SUPPLEMENTARY INFORMATION: We are adopting1 amendments to Rules 16b-32 and 16b-73 under the Securities Exchange Act of 1934 ("Exchange Act"),4 and Item 405 of Regulations S-K and S-B.5 I.

EXECUTIVE SUMMARY AND BACKGROUND Section 16 of the Exchange Act6 applies to every person who is the beneficial owner of more than 10% of any class of equity security registered under Section 12 of the Exchange Act,7 and each officer and director (collectively, "insiders") of the issuer of such security. Upon becoming an insider, or upon the Section 12 registration of that 1 The amendments were proposed in Exchange Act Release No. 49895 (June 21, 2004) [69 FR 35982] ("Proposing Release").

Comment letters are available for public inspection and copying in the Commission's Public Reference Room, 100 F Street, NE, Washington, DC 20549. We have posted electronically submitted comment letters on our Web site at http://www.sec.gov/rules/proposed/s72704.shtml. [Add when posted: A comment summary also is available at http://www.sec.gov/rules/extra/s72704summary.htm.] 2 17 CFR 240.16b-3. 3 17 CFR 240.16b-7. 4 15 U.S.C. 78a et seq. 5 17 CFR 229.405 and 17 CFR 228.405. 6 15 U.S.C. 78p. 7

15 U.S.C. 78l. 3 security, Section 16(a) 8 requires an insider to file an initial report with the Commission disclosing his or her beneficial ownership of all equity securities of the issuer.9 To keep this information current, Section 16(a) also requires insiders to report changes in such ownership, or the purchase or sale of a security-based swap agreement 10 involving such equity security.11

Section 16(b)12 provides the issuer (or shareholders suing on behalf of the issuer) **a private right of action** to recover from an insider any profit realized by the insider from any purchase and sale (or sale and purchase) of any equity security of the issuer within any period of less than six months. This statute is designed to curb abuses of inside information by insiders.13 Unlike insider trading prohibitions under general antifraud provisions,14 Section 16(b) operates without consideration of whether an insider actually was aware of material non-public information.15 Section 16(b) operates strictly, providing a private right of action to recover short-swing profits by insiders, on the theory that short-swing transactions (a purchase and sale within six months) present a 8 15 U.S.C. 78p(a). 9 Insiders file these reports on Form 3 [17 CFR 249.103]. 10 As defined in Section 206B of the Gramm-Leach-Bliley Financial Modernization Act of 1999, as amended by H.R. 4577, P. L. No. 106-554, 114 Stat. 2763. 11 Insiders file transaction reports on Form 4 [17 CFR 249.104] and Form 5 [17 CFR 249.105]. 12 15 U.S.C. 78p(b). 13 The first sentence of Section 16(b) begins with "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer [...]." 14 E.g., Exchange Act Section 10(b) [15 U.S.C. 78j(b)] and Exchange Act Rule 10b-5 [17 CFR 240.10b-5]. 15

# Exhibit 2

## Arnold Jacobs Profile.

Arnie Jacobs has a broad background in general corporate and securities law with an emphasis on private and public offerings, mergers and acquisitions, and corporate governance.

He has been listed for many years in *Best Lawyers in America, New York's Top Lawyers, Global Counsel 3000, Who's Who in America, Who's Who in the East*, and *Who's Who in American Law*. He was called "one of the deans of securities law" by *Crain's New York Business*. He was one of eight New York mergers and acquisitions/securities lawyers profiled in the July 2004 *Corporate Counsel*. He also was nationally ranked in *Chambers USA* 2008-2011, and cited as one of the 31 "Most Valued Players" in the United States in client service by BTI Consulting Group, the premier rating agency for client satisfaction, for 2008 and 2009. Arnie was the subject of the first *New York Super Lawyers* "Brilliant Careers" question and answer page in September 2008. The book *2009 Legal (US) 500*listed him as one of 12 "Leading Lawyers" for large M&A deals.

His practice includes representing diverse private equity funds and public companies, and working on public offerings, private placements, venture capital and private equity investments, and mergers and acquisitions.

He twice was a member of Proskauer's six-person Executive Committee, which governs the firm. As a result of his most recent election to the Executive Committee, he gave up his position as co-Chair of the firm's Corporate Department.

Arnie is an Adjunct Professor of Law at Cornell Law School, is an Adjunct Professor of Law at Cardozo Law School, and was for 15 years an Adjunct Professor of Law at New York Law School.

While he was Chairman of the Committee on Securities Regulation of the New York City Bar Association, he testified on securities legislation before committees of the U.S. House of Representatives and the U.S. Senate.

Arnie is the author of 25 books and numerous articles on various aspects of securities and corporate law, which have been cited by the U.S. Supreme Court a number of times

(most recently in 2011), as well as in hundreds of other cases and authorities. As a result of one of those articles, he holds the world's record for the law review article with the most footnotes (4,824 to be exact). His books include:

- *Disclosure and Remedies Under the Securities Laws*, a seven-volume, 7,500-page treatise discussing what disclosure is required under federal and state securities laws, and the remedies for noncompliance
- *Litigation and Practice Under Rule 10b-5*, a six-volume, 5,000-page treatise dealing with securities fraud
- *Section 16(b) of The Securities Exchange Act*, a 1,400-page treatise dealing with short-swing profits
- *Manual of Corporate Forms for Securities Practice*, a four-volume, 4,000-page treatise setting forth forms to be used
- *Opinion Letters in Securities Matters*, a three-volume, 3,500-page treatise dealing in depth with opinions lawyers are to render
- *The Impact of Rule 10b-5*, a three-volume, 1,500-page treatise explaining various aspects of securities fraud
- *The Williams Act - Tender Offer and Stock Accumulations*, a 1,100-page treatise on takeovers and Schedule 13Ds

# Exhibit 3

Arnold Jacobs 2017 Section 16 (b) Act pages 591-595

*Securities Law Handbook Series*

# Section 16 of the Securities Exchange Act

2017 Edition

by Arnold S. Jacobs

(Issued March, 2017)




*For Customer Assistance Call 1-800-328-4880*

Mat #41878746

Act. As we previously discussed,[59] registration is required only if an equity security is listed on a national securities exchange[60] or the issuer has 500 or more record holders[61] and total assets exceeding $10 million.[62] The trading of securities listed on a national securities exchange involves interstate commerce for exchanges are engaged in interstate commerce.[63] And, a company must register under the 500 person-$10 million asset test only if it is engaged in interstate commerce or its securities are traded by use of the mails.[64]

The tax aspects of a Section 16(b) recovery are twofold.[65] First, the receipt by the issuer of the profit is taxable income to it. Second, according to the courts of appeals (as distinguished from contrary authority in the Tax Court), the insider cannot deduct the profit the insider pays the issuer as an ordinary and necessary business expense.

To accomplish the statutory goal of recovering short-swing profits, Congress created an express private right of action:

> Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter.

Thus, Congress provided a remedy for those who neither bought nor sold,[66] an unusual provision within the framework of the federal securities laws.[67] Giving security holders the right to bring suit is important since corporate officers and directors might well be reluctant to sue a fellow officer or director.[68] While this cause of action has some attributes of a derivative suit (for instance, a security holder can sue and the recovery flows to the corporation),[69] the cause of action is not derivative at all; rather, it is one possessing an independent statutory origin.[70] Therefore, procedural restrictions on derivative suits do not burden Section 16(b) actions.[71] We treat later a number of procedural issues relating to the private right of action,[72] such as capacity and standing to sue[73] and the sixty-day demand.[74] Security holders sometimes lose their standing to bring a Section 16(b) case in mergers and similar

[59] See § 2:65 Ns. 63–76 and the accompanying text.

[60] Exchange Act § 12(b).

[61] Exchange Act § 12(g)(1)(B).

[62] Exchange Act § 12(g)(1)(B); Exchange Act Rule 12g-1.

[63] See Jacobs, Disclosure and Remedies Under the Securities Laws § 8:2 N. 59 and the accompanying text.

[64] Exchange Act § 12(g)(1).

[65] Bloomenthal, Securities and Federal Corporate Law § 10.14[3]; Hazen, Securities Regulation § 12.3, at 417 (1985); 1 Krogen & McNulty, *Federal Income Tax* 317 (1979); 2 Oleck, *Modern Corporation Law* 282 (1959); Stanley & Kilcullen, *Federal Income Tax Law* § 162(a), at 5-17 to 5-18 (Parker, Krader, Leimberg, & Satinsky 7th ed. 1983); see § 3:22 N. 141 and the accompanying text.

[66] See § 3:36 N. 139 and the accompanying text.

[67] See § 3:36 Ns. 139–146 and the accompanying text. See generally Jacobs, Disclosure and Remedies Under the Securities Laws §§ 9:5 and 9:6 (standing to sue in Rule 10b-5 cases).

[68] Fistel v. Christman, 133 F. Supp. 300, 304 (S.D. N.Y. 1955).

[69] As to derivative suits under other securities laws, see Jacobs, Disclosure and Remedies Under the Securities Laws §§ 21:28 through 21:33.

[70] See § 3:35 N. 6 and the accompanying text.

[71] See § 3:35 Ns. 11–14 and § 3:36 Ns. 114–117 and the accompanying text.

[72] See §§ 3:34 to 3:50.

[73] See § 3:36.

[74] See § 3:37.

be a legal, enforceable obligation under state law.[24] Accordingly, a "debt of honor"[25] or a "moral obligation"[26] is not ample. To be "previously contracted," the debt must exist prior to and independently of any obligation to transfer the securities.[27] Thus, a right to convert in a debt instrument does not meet the test.[27.50] Allowing the debt exception to include an obligation under the contract for the transfer of the shares would open the doors to all manner of abuse.[28] Accordingly, neither the issuer promising to deliver shares,[29] an insider obtaining warrants pursuant to an employment contract with the issuer,[30] nor the defendant receiving shares upon the exercise of stock options[31] is within the exception. On the other hand, an issuer paying in stock rather than cash pursuant to a bonus plan satisfies the exception.[32]

## VIII. PRACTICE AND PROCEDURE

### § 3:34 Generally

We have already observed that Section 16(b) creates an express private right of action.[1] We consider in Sections 3:35–3:50 certain practice and procedure issues associated with that cause of action.

### § 3:35 Introduction

Some opinions refer to a Section 16(b) lawsuit as a derivative action.[1] But, every thoughtful case addressing the issue concludes that a Section 16(b) suit is not a de-

4443828, at *5 (S.D.N.Y. Sept. 29, 2008), reconsideration denied 2009 WL 1514310 (S.D.N.Y. May 29, 2009).

[24]Schur v. Salzman, 365 F. Supp. 725, 733, Fed. Sec. L. Rep. (CCH) ¶ 94370 (S.D. N.Y. 1973).

[25]Schur v. Salzman, 365 F. Supp. 725, 733, Fed. Sec. L. Rep. (CCH) ¶ 94370 (S.D. N.Y. 1973).

[26]Schur v. Salzman, 365 F. Supp. 725, 733, Fed. Sec. L. Rep. (CCH) ¶ 94370 (S.D. N.Y. 1973).

[27]Heli-Coil Corp. v. Webster, 352 F.2d 156, 168 (3d Cir. 1965); Booth v. Varian Associates, 334 F.2d 1, 5–6 (1st Cir. 1964), cert. denied 379 U.S. 961 (1965), aff'g 224 F. Supp. 225, 227–28 (D. Mass. 1963); Rheem Mfg. Co. v. Rheem, 295 F.2d 473, 476 (9th Cir. 1961); Blau v. Ogsbury, [1952-1956 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,635, at 91,931 (S.D.N.Y. 1953), aff'd 210 F.2d 426 (2d Cir. 1954).

[27.50]Analytical Surveys, Inc. v. Tonga Partners, L.P., 2008 WL 4443828, at *5 (S.D.N.Y. Sept. 29, 2008), reconsideration denied 2009 WL 1514310 (S.D.N.Y. May 29, 2009), aff'd 684 F.3d 36 (2d Cir. 2012).

[28]Heli-Coil Corp. v. Webster, 352 F.2d 156, 168–69 (3d Cir. 1965); Booth v. Varian Associates, 334 F.2d 1, 5–6 (1st Cir. 1964), cert. denied 379 U.S. 961 (1965), aff'g 224 F. Supp. 225, 227–28 (D. Mass. 1963).

[29]Blau v. Ogsbury, [1952-1956 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,635, at 91,931 (S.D.N.Y. 1953), aff'd 210 F.2d 426 (2d Cir. 1954).

[30]Rheem Mfg. Co. v. Rheem, 295 F.2d 473, 476 (9th Cir. 1961); Truncale v. Blumberg, 80 F. Supp. 387, 392 (S.D. N.Y. 1948).

[31]Rheem Mfg. Co. v. Rheem, 295 F.2d 473, 476 (9th Cir. 1961).

[32]Rheem Mfg. Co. v. Rheem, 295 F.2d 473, 476 (9th Cir. 1961).

**[Section 3:34]**

[1]See § 3:1 Ns. 66–74 and the accompanying text.

**[Section 3:35]**

[1]Roth v. Goldman Sachs Group, Inc., 740 F.3d 865, 867 (2d Cir. 2014); Morrison v. Madison Dearborn Capital Partners III L.P., 463 F.3d 312, 313, Fed. Sec. L. Rep. (CCH) ¶ 93956 (3d Cir. 2006), cert. denied, 2007 WL 506831 (U.S. 2007); DiLorenzo v. Murphy, 443 F.3d 224, 224, Fed. Sec. L. Rep. (CCH) ¶ 93738 (2d Cir. 2006); iXL Enterprises, Inc. v. GE Capital Corp., 167 Fed. Appx. 824, 825 (2d Cir. 2006); Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 138, 139, Fed. Sec. L. Rep. (CCH) ¶ 91953 (2d Cir. 2002); Rosenberg v. XM Ventures, 274 F.3d 137, 139, Fed. Sec. L. Rep. (CCH) ¶ 91641 (3d Cir. 2001); Levy v. Southbrook Intern. Investments, Ltd., 263 F.3d 10, 11 (2d Cir. 2001); Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998); Colan v. Mesa Petroleum Co., 951 F.2d 1512, 123 A.L.R. Fed. 715 (9th Cir. 1991), cert. denied

ve action.[2] To be sure, a Section 16(b) case and a derivative action have much
mon: A stockholder can sue if the corporation does not;[3] the corporation is the
ment, sometimes unwillingly, to recover against an insider;[4] and any recovery
to the issuer's benefit.[5] Yet, Section 16(b) suits and derivative actions are dis-
shable in a number of ways. First, a Section 16(b) cause of action is a
orily created right, not a derivative or secondary right.[6] Second, for the reasons
th in Section 2 of the 1934 Act[7] and in Section 16(b)'s preamble,[8] a Section
cause of action clearly was intended as an instrument of statutory policy of
the general public was the ultimate beneficiary.[9] Third, Section 16(b) created
cause of action that did not then exist at common law or by statute.[10] Fourth,
vative action and a Section 16(b) case differ with respect to the board of direc-
ole in conducting the litigation. In derivative actions, the general rule is that
ard of directors, in the exercise of good faith and reasonable business judg-
can determine whether the best interests of the entity and its stockholders
be served by engaging in litigation.[11] The express language of Section 16(b)

. 911 (1992); Colan v. Cutler-Hammer, Inc., 812 F.2d 357, Fed. Sec. L. Rep. ¶ 93,146 (7th Cir.), nied 484 U.S. 868 (1987) (NO. 86-2013); Sterman v. Ferro Corp., 785 F.2d 162, 163, Fed. Sec. L. CH) ¶ 92503 (6th Cir. 1986); Portnoy v. Memorex Corp., 667 F.2d 1281, 1282, Fed. Sec. L. Rep. ¶ 98466 (9th Cir. 1982); Whittaker v. Whittaker Corp., 639 F.2d 516, 531, Fed. Sec. L. Rep. ¶ 97871, 67 A.L.R. Fed. 819, cert. denied 454 U.S. 1031 (9th Cir. 1981); Stella v. Graham-Paige Corp., 259 F.2d 476, 477 (2d Cir. 1958); Gwozdzinsky on Behalf of Revco D.S., Inc. v. Magten lanagement Corp., 913 F. Supp. 310, 311, Fed. Sec. L. Rep. (CCH) ¶ 99083 (S.D. N.Y. 1996); v. Saud, 903 F. Supp. 452, 454, Fed. Sec. L. Rep. (CCH) ¶ 98832, Fed. Sec. L. Rep. (CCH) (S.D. N.Y. 1994); Schaffer on Behalf of Triton Energy Corp. v. Soros, 1994 WL 592891 (S.D. 94); Levner v. Al Saud, 1993 WL 187899 (S.D. N.Y. 1993); Frankel v. Slotkin, 705 F. Supp. 105, l. Sec. L. Rep. (CCH) ¶ 94310 (E.D. N.Y. 1989); Portnoy v. Standard-Pacific Corp., 666 F. Supp. l, Fed. Sec. L. Rep. (CCH) ¶ 93399 (N.D. Ill. 1987); Morales v. Lukens, Inc., 593 F. Supp. 1209, ed. Sec. L. Rep. (CCH) ¶ 91676 (S.D. N.Y. 1984); Staffin v. Greenberg, 509 F. Supp. 825, 840, . L. Rep. (CCH) ¶ 97895 (E.D. Pa. 1981), aff'd 672 F.2d 1196 (3d Cir. 1982).

ederal Deposit Ins. Corp. v. American Bank Trust Shares, Inc. (ABTS), 558 F.2d 711, 716 (4th 7) (not a derivative suit for purposes of Fed. R. Civ. P. 23.1), cert. denied 351 U.S. 919 (1956); Oppenheim, 250 F. Supp. 881, 885 (S.D. N.Y. 1966); Schaffer ex rel. Lasersight, Inc. v. CC ents, LDC, 286 F. Supp. 2d 279, 281, 51 Collier Bankr. Cas. 2d (MB) 600 (S.D. N.Y. 2003); e v. Universal Pictures Co., 76 F. Supp. 465, 470 (S.D. N.Y. 1948); Ownership Reports and by Officers, Directors and Principal Security Holder, Exchange Act Release No. 26333, .b. (Dec. 2, 1988) (similar to, but different from, a derivative suit).

ottish v. Divak, 71 F. Supp. 737, 739 (S.D. N.Y. 1947); see § 3:36.

agida v. Continental Can Co., 231 F.2d 843, 846 (2d Cir.), cert. denied 351 U.S. 972 (1956).

ottish v. Divak, 71 F. Supp. 737, 739 (S.D. N.Y. 1947); see § 3:22 Ns. 96–103 and the ac- ing text.

endell In Behalf of Viacom, Inc. v. Gollust, 909 F.2d 724, 728, Fed. Sec. L. Rep. (CCH) ¶ 95378, R. Serv. 3d 129 (2d Cir. 1990), aff'd 501 U.S. 115 (1991); Schaffer ex rel. Lasersight, Inc. v. CC ents, LDC, 286 F. Supp. 2d 279, 282, 51 Collier Bankr. Cas. 2d (MB) 600 (S.D. N.Y. 2003); eim v. Murchison, 227 F.2d 737, 738–39 (5th Cir. 1955); Blau v. Oppenheim, 250 F. Supp. 881, . N.Y. 1966); Truncale v. Universal Pictures Co., 76 F. Supp. 465, 470 (S.D. N.Y. 1948); Pottish , 71 F. Supp. 737, 738–39 (S.D. N.Y. 1947).

ction 2 of the 1934 Act sets forth the necessity for regulation in considerable detail. That Sec- ides that regulation of many aspects of securities trading are affected with a national public including trades by officers, directors, and principal security holders.

e § 3:3 Ns. 9–10 and the accompanying text.

haffer ex rel. Lasersight, Inc. v. CC Investments, LDC, 286 F. Supp. 2d 279, 282, 51 Collier as. 2d (MB) 600 (S.D. N.Y. 2003); Epstein v. Shindler, 26 F.R.D. 176, 178 (S.D. N.Y. 1960); v. Cameron, 81 F. Supp. 882, 884 (S.D. N.Y. 1948).

haffer ex rel. Lasersight, Inc. v. CC Investments, LDC, 286 F. Supp. 2d 279, 282, 51 Collier as. 2d (MB) 600 (S.D. N.Y. 2003); Pottish v. Divak, 71 F. Supp. 737, 738–39 (S.D. N.Y. 1947).

llegrino v. Nesbit, 203 F.2d 463, 466–67, 37 A.L.R.2d 1296 (9th Cir. 1953) (intervention). See



renders this genera
can bring a Section
in good faith and r
commences Section
ecute the suit.[14] Al
Federal Rules of C
applicable, is a sou

A Section 16(b
consequences. First
Second, the corpor
torney cannot rep
stayed by the issue

Most Section 16
against the trading
tion; he may, but i

In the remainde
sue,[20] the sixty-da
jurisdiction,[23] ven
counterclaims,[28] in

also § 3:37 Ns. 24–25
action upon recommen

[12]Pellegrino v. N
Levner v. Saud, 903 F
¶ 99080 (S.D. N.Y. 19

[13]Pellegrino v. N
§ 3:37.

[14]Pellegrino v. Ne

[15]As to Rule 23.1
also Jacobs, Disclosur
tive suits).

[16]Portnoy v. Kav
¶ 97128, 51 A.L.R. Fe

[17]Federal Deposi
Cir. 1977).

[18]Weisman v. Sp

[18.50]Schaffer ex rel
Collier Bankr. Cas. 2

[19]Steel Partners
(2d Cir. 2002); Texas
(CCH) ¶ 99488 (5th
Fed. Sec. L. Rep. (C
(declaratory judgmen

[20]See § 3:36.

[21]See § 3:37.

[22]See § 3:38.

[23]See § 3:39.

[24]See § 3:40.

[25]See § 3:41.

[26]See § 3:42.

[27]See § 3:43.

[28]See § 3:44.

[29]See § 3:45.

renders this general rule inapplicable to Section 16(b) suits.[12] Any security holder can bring a Section 16(b) suit if the corporation does not, even if the directors acted in good faith and reasonably when declining to sue.[13] Moreover, a corporation that commences Section 16(b) litigation has a statutorily imposed duty diligently to prosecute the suit.[14] Although a Section 16(b) claim is not derivative, Rule 23.1 of the Federal Rules of Civil Procedure[15] governing derivative actions, while not directly applicable, is a source for analogies in Section 16(b) decisions.[16]

A Section 16(b) suit's similarity to a derivative action has three other consequences. First, a Section 16(b) claim belongs to the issuer, not its stockholders.[17] Second, the corporation and the insider have divergent interests so the same attorney cannot represent both.[18] Third, a Section 16(b) claim is not automatically stayed by the issuer's bankruptcy.[18.50]

Most Section 16(b) suits are brought by the corporation or a security holder against the trading insider. Instead, an insider can bring a declaratory judgment action; he may, but is not obligated to, pay the profit to the entity before suit.[19]

In the remainder of these Sections 3:35–3:50, we discuss capacity and standing to sue,[20] the sixty-day demand requirement,[21] subject matter jurisdiction,[22] personal jurisdiction,[23] venue,[24] service of process,[25] complaints,[26] indispensable parties,[27] counterclaims,[28] intervention,[29] death of a party,[30] security for expenses,[31] burden of

---

also § 3:37 Ns. 24–25 and the accompanying text (dismissal of a 10b-5 derivative suit or Section 16(b) action upon recommendation of a committee of independent directors).

[12]Pellegrino v. Nesbit, 203 F.2d 463, 466–67, 37 A.L.R.2d 1296 (9th Cir. 1953) (intervention); Levner v. Saud, 903 F. Supp. 452, 455 n.2, Fed. Sec. L. Rep. (CCH) ¶ 98832, Fed. Sec. L. Rep. (CCH) ¶ 99080 (S.D. N.Y. 1994).

[13]Pellegrino v. Nesbit, 203 F.2d 463, 467, 37 A.L.R.2d 1296 (9th Cir. 1953) (intervention); see § 3:37.

[14]Pellegrino v. Nesbit, 203 F.2d 463, 467, 37 A.L.R.2d 1296 (9th Cir. 1953).

[15]As to Rule 23.1, see 3B Moore & Kennedy, Moore's Federal Practice ¶ 23.1 (2d ed. 1985). See also Jacobs, Disclosure and Remedies Under the Securities Laws §§ 21:28 through 21:33 (10b-5 derivative suits).

[16]Portnoy v. Kawecki Berylco Industries, Inc., 607 F.2d 765, 767 n.3, Fed. Sec. L. Rep. (CCH) ¶ 97128, 51 A.L.R. Fed. 774 (7th Cir. 1979).

[17]Federal Deposit Ins. Corp. v. American Bank Trust Shares, Inc. (ABTS), 558 F.2d 711, 716 (4th Cir. 1977).

[18]Weisman v. Spector, 158 F. Supp. 789, 791 (S.D. N.Y. 1958).

[18.50]Schaffer ex rel. Lasersight, Inc. v. CC Investments, LDC, 286 F. Supp. 2d 279, 280, 283-84, 51 Collier Bankr. Cas. 2d (MB) 600 (S.D. N.Y. 2003).

[19]Steel Partners II, L.P. v. Bell Industries, Inc., 315 F.3d 120, 122, Fed. Sec. L. Rep. (CCH) ¶ 92243 (2d Cir. 2002); Texas Intern. Airlines v. National Airlines, Inc., 714 F.2d 533, 535–36, Fed. Sec. L. Rep. (CCH) ¶ 99488 (5th Cir. 1983) (did not pay profit); Whittaker v. Whittaker Corp., 639 F.2d 516, 518, Fed. Sec. L. Rep. (CCH) ¶ 97871, 67 A.L.R. Fed. 819, cert. denied 454 U.S. 1031 (9th Cir. 1981) (declaratory judgment to get back profit paid).

[20]See § 3:36.

[21]See § 3:37.

[22]See § 3:38.

[23]See § 3:39.

[24]See § 3:40.

[25]See § 3:41.

[26]See § 3:42.

[27]See § 3:43.

[28]See § 3:44.

[29]See § 3:45.

proof,[32] right to a jury trial,[33] and settlement.[34] We consider later the availability of attorneys' fees.[35]

## § 3:36 Capacity and standing to sue

Section 16(b) specifically empowers two plaintiffs to sue. First, it states: "Suit to recover such profit may be instituted at law or in equity . . . by the issuer." This presents no real interpretative problem.[1] Second, Section 16(b) provides: "Suit to recover such profit may be instituted at law or in equity . . . by *the owner of any security of the issuer*."[2] We address first the meaning of these italicized words,[3] then whether diversity of citizenship,[4] jurisdictional amount,[5] contemporaneous ownership,[6] and a purchase or sale by the plaintiff[7] are required, whether Section 16(b) claims are assignable[8] and can survive the plaintiff's death,[9] does a person who makes a demand to sue have to own a security,[10] and, finally, the impact of The Private Securities Litigation Reform Act of 1995[11] and the Bankruptcy Code.[11.50] We already have observed that the Commission cannot sue to recover a Section 16(b) profit.[12]

In contrast to the narrowly drawn limits on the class of defendants,[13] the statutory definitions identifying who can sue indicate that Congress intended to grant enforcement standing of considerable breadth.[14] The only textual restriction on standing to sue is that the plaintiff must be the "owner of [a] security" of the "issuer" at the time suit is "instituted."[15]

The word "security" in the phrase "the owner of any security of the issuer"[16] should be analyzed at the beginning. We already have considered the scope of the

---

[30]See § 3:46.

[31]See § 3:47.

[32]See § 3:48.

[33]See § 3:49.

[34]See § 3:22.

[35]See § 3:51.

**[Section 3:36]**

[1]See § 3:22 Ns. 96–103 and the accompanying text (recovery goes to corporation).

[2]Emphasis added.

[3]See § 3:36 Ns. 16–110 and the accompanying text.

[4]See § 3:36 N. 111 and the accompanying text.

[5]See § 3:36 N. 112 and the accompanying text.

[6]See § 3:36 Ns. 113–138 and the accompanying text.

[7]See § 3:36 Ns. 139–146 and the accompanying text.

[8]See § 3:36 Ns. 147–148 and the accompanying text.

[9]Schaffer ex rel. Lasersight, Inc. v. CC Investments, LDC, 286 F. Supp. 2d 279, 282, 51 Collier Bankr. Cas. 2d (MB) 600 (S.D. N.Y. 2003).

[10]See § 3:36 N. 150 and the accompanying text.

[11]See § 3:36 Ns. 151–153 and the accompanying text.

[11.50]See § 3:36 N. 154 and the accompanying text.

[12]See § 3:1 Ns. 79–86 and the accompanying text.

[13]See §§ 2:67, 2:68, and 2:69.

[14]Gollust v. Mendell, 501 U.S. 115, 122, 111 S. Ct. 2173, 115 L. Ed. 2d 109, Fed. Sec. L. Rep. (CCH) ¶ 96001 (1991); Goldstein v. QVT Associates GP LLC, Fed. Sec. L. Rep. (CCH) ¶ 95937, 2010 WL 4058157, *2 (S.D. N.Y. 2010).

[15]Gollust v. Mendell, 501 U.S. 115, 122–23, 111 S. Ct. 2173, 115 L. Ed. 2d 109, Fed. Sec. L. Rep. (CCH) ¶ 96001 (1991).

[16]See § 3:36 N. 2 and the accompanying text.

term "security."[17] Congress drafted Section 16(b) carefully for it permitted the owner of a "security" to sue while it allowed recovery of a profit from trading in "equity securities."[18] Thus, a person can sue if he holds any security, whether or not it is an equity security. Even though holders of stock have brought almost all the cases, courts have permitted a holder of warrants[19] or of a convertible debenture[20] to commence a Section 16(b) suit.[21] The high Court went further by acknowledging that:

> [Section] 16(b) places no significant restriction on the type of security adequate to confer standing. "Any security" will suffice, . . . the statutory definition being broad enough to include stock, notes, warrants, bonds, debentures, puts, calls, and a variety of other financial instruments.[22]

Justice Souter also observed that a holder of a bond has standing to bring a Section 16(b) claim.[23] Obviously, the plaintiff need not own securities of the class the insider traded.[24] Nor does the plaintiff need to prove that he bought or sold securities, or indeed took any action, in reliance on the defendant's acts or transactions.[25]

Cases have also construed the word "owner" of any security of the issuer. First, they have permitted both record and beneficial owners to sue.[26] Judge Clark addressed this point in *Blau v. Lamb*.[27] He contrasted the word "owner," which described who is authorized to sue, with the term "beneficial owner,"[28] which is used to determine who can be an insider.[29] He then continued:

> The inference that here "owner" is not limited to "beneficial" owner seems clear. Since "owner" is a word having a variety of meanings, with its significance varying according to the context and the subject matter with which it is used, . . . the broader meaning here is better suited to carry out the remedial purpose of the statute and to enforce the fiduciary nature of the plaintiff's position as to the corporation.[30]

Judge Clark also opined that a person who holds stock merely as a nominee for another has sufficient indicia of ownership to sue.[31] This conclusion is in accord with allowing beneficial or record owners to make the Section 16(b) sixty-day demand on the corporation,[32] to bring a Rule 10b-5 case,[33] and to sue under the proxy rules.[34] Second, an owner of a security can commence a Section 16(b) action no matter how

---

[17]See § 2:65 Ns. 10–13 and the accompanying text.

[18]As to the scope of "equity security," see § 2:65.

[19]Newmark v. R K O General, Inc., 294 F. Supp. 358, 359 n.1 (S.D. N.Y. 1968).

[20]Newmark v. R K O General, Inc., 294 F. Supp. 358, 359 n.1 (S.D. N.Y. 1968).

[21]Of course, both warrants and convertible debentures are equity securities. See § 2:65.

[22]Gollust v. Mendell, 501 U.S. 115, 123, 111 S. Ct. 2173, 115 L. Ed. 2d 109, Fed. Sec. L. Rep. (CCH) ¶ 96001 (1991).

[23]Gollust v. Mendell, 501 U.S. 115, 127, 111 S. Ct. 2173, 115 L. Ed. 2d 109, Fed. Sec. L. Rep. (CCH) ¶ 96001 (1991).

[24]Mendell In Behalf of Viacom, Inc. v. Gollust, 909 F.2d 724, 728, Fed. Sec. L. Rep. (CCH) ¶ 95378, 17 Fed. R. Serv. 3d 129 (2d Cir. 1990), aff'd 501 U.S. 115 (1991); Smolowe v. Delendo Corp., 136 F.2d 231, 148 A.L.R. 300, cert. denied 320 U.S. 751 (C.C.A. 2d Cir. 1943).

[25]Ceres Partners v. GEL Associates, 918 F.2d 349, 362, Fed. Sec. L. Rep. (CCH) ¶ 95639 (2d Cir. 1990).

[26]Kogan v. Schulte, 61 F. Supp. 604, 605, (S.D. N.Y. 1945).

[27]Blau v. Lamb, 314 F.2d 618, cert. denied 375 U.S. 813 (2d Cir. 1963).

[28]See §§ 2:2 to 2:64.

[29]Blau v. Lamb, 314 F.2d 618, cert. denied 375 U.S. 813 (2d Cir. 1963).

[30]Blau v. Lamb, 314 F.2d 618, cert. denied 375 U.S. 813 (2d Cir. 1963).

[31]Blau v. Lamb, 314 F.2d 618, cert. denied 375 U.S. 813 (2d Cir. 1963).

[32]See § 3:37 Ns. 18–19 and the accompanying text.

[33]See Jacobs, Disclosure and Remedies Under the Securities Laws § 21:29. N. 10 and the ac-

# Exhibit 4

Schaffer Ex Rel. Lasersight Incorporated v. Cc Investments, Ldc, 286 F. Supp. 2d 279 (S.D.N.Y. 2003)

# Schaffer Ex Rel. Lasersight Incorporated v. Cc Investments, Ldc, 286 F. Supp. 2d 279 (S.D.N.Y. 2003)

---

**Barbara SCHAFFER, on behalf of LASERSIGHT INCORPORATED Plaintiff,**

**v.**

**CC INVESTMENTS, LDC, Castle Creek Partners, LLC, Societe Generale Shepherd Investments International, Ltd., Stark International, Brian J. Stark, Michael A. Roth, and Lasersight Incorporated, Defendants.**

***DECISION AND ORDER***

MARRERO, District Judge.

Plaintiff Barbara Schaffer ("Schaffer") brings this action pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78b (" § 16(b)"), for disgorgement of short-swing profits allegedly obtained by Defendants[1] acting as a group in violation of that section of the Act. The Court has issued several rulings concerning various aspects of this case,[2] but focuses in this Decision and Order on one previously undiscussed matter that has recently arisen.

On September 5, 2003, Lasersight announced that it had filed for protection under the United States bankruptcy laws in the United States Bankruptcy Court, Middle District of Florida, Orlando Division.[3] Defendants argue that as a result, all further proceedings in

the action before this Court should be automatically stayed pursuant to 11 U.S.C. § 362 (" § 362"). Schaffer counters that such a stay is inapplicable because her § 16(b) claim does not involve property of the debtor, Lasersight, which is named in this action only as a nominal defendant. Surprisingly, there is little guidance on this issue from either other courts or commentators.[4] However, after careful consideration, the Court agrees with Schaffer.

Section 362(a) provides in pertinent part that "a petition filed under section 301, ***281** 302, or 303 of this title ... operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a) (3). The key phrase for purposes of resolving the instant matter is "property of the estate," which is defined in § 541 of the Bankruptcy Code as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) (1).[5]

In connection with § 362, federal courts have interpreted § 541 "to prevent individual shareholders and creditors from suing to enforce a right of the corporation when that corporation is in bankruptcy," thus leaving such rights to be vindicated by the bankruptcy trustee. *Cumberland Oil Corp. v. Thropp,* 791 F.2d 1037, 1042 (2d Cir. 1986); *see also Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.,* 79 B.R. 534, 540 (S.D.N.Y.1987) (holding that a § 362 stay "prevents individual creditors from suing to enforce a right of action belonging to the corporation when that corporation is in bankruptcy."). This rule serves to ensure that the entire property constituting the debtor's estate remains intact and subject to management by the trustee and control of the bankruptcy court for the purposes of protecting the rights and interests of all creditors in an orderly and equitable distribution of the estate's assets. *See In re MortgageAmerica Corp.,* 714 F.2d 1266, 1274 (5th Cir. 1983) ("Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally."). Piecemeal resolution of claims and parceling of the estate's property through collateral litigation outside of the bankruptcy proceedings would undermine these objectives. *See id.* ("Without [the § 362 stay], certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.").

However, consistent with the purpose of this rule, "the stay does not apply to suits brought to recover rights of action which belong to the plaintiff-creditor." *Kommanditselskab,* 79 B.R. at 540. Thus, if Schaffer is suing to recover on a right of action belonging to Lasersight, the automatic stay would operate, whereas if Schaffer is suing to recover on a right of action belonging to Schaffer personally, the stay would not operate. *See id.*

Many courts have ruled that the bankruptcy estate includes derivative actions brought by shareholders, and thus "[a] corporation's filing for bankruptcy cuts off a shareholder's ability to bring a derivative claim." *In re General Development Corp.,* 179 B.R. 335, 338 (S.D.Fla.1995); *see also Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986) (holding that the § 541 estate includes all derivative actions to recover damages for, among other things, misconduct by officers); *Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984) (holding that shareholder's derivative suit is property of the estate). However, although some courts use the term "derivative" to describe § 16(b) lawsuits, under the pure application of the concept, a § 16(b) action is not a derivative action in the way that a typical shareholder derivative action is. *See Dottenheim v. Murchison,* 227 F.2d 737, 738 (5th Cir. 1955) ("[Section 16(b)] creates a new cause of action, which, while similar in some respects to a secondary or derivative right, is not such a right at all."); *Blau v. Oppenheim,* 250 F. Supp. 881, 885 (S.D.N.Y.1966) ***282** (Weinfeld, J.) ("Preliminarily it should be emphasized that strictly speaking a section 16(b) suit to recover short-swing profits is not derivative, although some of the cases so describe it.").

Indeed, while there are some similarities between a § 16(b) case and a traditional shareholder derivative action, including the elements that both actions involve as the lead plaintiff a stockholder prosecuting the underlying claim after the corporation declines to do so and that any recovery inures to the issuer's benefit, § 16(b) suits and derivative actions differ in more fundamental ways. First, a § 16(b) cause of action is a statutory enabling right directly empowering the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law. *See Dottenheim,* 227 F.2d at 738 ("[Section 16(b)] creates a new cause of action, which ... is in reality a primary right. This is so because the statute which creates it makes it so."); *Blau,* 250 F. Supp. at 885

("[A] section 16(b) suit ... is not derivative ... but one to enforce a primary right created by the Act in favor of the issuer as well as its security holders."); *Pottish v. Divak,* 71 F. Supp. 737, 738-39 (S.D.N.Y. 1947) ("Section 16(b) of the Securities Exchange Act of 1934 creates a new cause of action which did not exist at common law or by virtue of the provisions of any statute."). In other words, the § 16(b) action amounts to an *enforcement* right that, if successful, enables the corporation to gain from the redistribution of insiders' illicit profits to which the corporation had no right of recovery under common law causes of action.

Furthermore, as reflected in the plain language of the statute, § 16(b) was enacted because of the "national public interest which makes it necessary to provide for regulation and control of such transactions." 15 U.S.C. § 78b; *see also Feder v. Martin Marietta Corp.,* 406 F.2d 260, 262 (2d Cir.1969) ("The purpose of section 16(b) as succinctly expressed in the statute itself is to prevent `unfair use of information' by insiders and thereby to protect the public and outside stockholders."). By contrast, the underlying scope and purposes of the pure derivative cause of action serve broader objectives. Such an action enables the shareholder to prosecute a broader range of wrongdoing by corporate officers or agents committed against the corporation on the basis of recognized causes of action the corporation itself would have under the common law, and thereby to vindicate more extensive rights and interests on behalf of the corporation. *See In re Penn Central Securities Litigation,* 347 F. Supp. 1324, 1326 (E.D.Pa.1972) (quoting 13 W. Fletcher, *Corporations* § 5911 (1970)) ("The action is derivative, *i.e.,* in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.").

Here, these distinctions support the argument that, for the purposes of § 362, a § 16(b) cause of action is one primarily belonging to Schaffer. First, the right to sue under § 16(b) is Schaffer's primary right created by statute, not a derivative right emanating from interests of the corporation which would then remain with or revert to the corporation's estate upon bankruptcy. Second, the § 16(b) action, as the instant case illustrates, is unlikely to result in a potential call upon the property of the estate because such a suit is brought against the corporation's insiders to disgorge illicit ***283** profits from their private

trading in the issuer's shares. *See Egghead.Com, Inc. v. Brookhaven Capital Management Co.,* 340 F.3d 79, 83 (2d Cir.2003). Thus, the corporation's resources would not be implicated in any obligation incurred by the insider in defending or satisfying § 16(b) liability, nor should the corporation be required to indemnify the insider for his § 16(b) violation. *See First Golden Bancorporation v. Weiszmann,* 942 F.2d 726, 729 (10th Cir. 1991) (holding that "the public policy behind section 16(b) renders invalid any attempt by an insider to seek indemnification for his liability under section 16(b).").[6] In fact, rather than burdening and draining the estate with the costs and other exposures of litigation, because the lawsuit is privately prosecuted on behalf of the corporation, the § 16(b) action represents a potential source to augment the estate to the benefit of all its creditors, at no expense to it. The traditional derivative action, on the other hand, may directly affect the property and other resources of the corporation to the extent the corporation itself may be called upon to litigate against any adverse interests asserted by the shareholder, or to defend or indemnify corporate officers who may be the subjects of the action.

Third, the public policy reasons underlying § 16(b) favor enforcement to protect, not just the narrow community of interests of the corporation, but the interests of the general public in full disclosure and honest dealing in transactions involving corporate insiders that may affect the value of investments in the corporation's shares and the integrity of the securities markets. Therefore, undue delay in enforcing a § 16(b) action is not warranted by the general public policy reasons underlying a § 362 stay.

Fourth, § 362 embodies federal statutory policy that, absent explicit provisions in other federal law, presumptively operates to encompass within the debtor's estate and the jurisdiction of the bankruptcy court property deriving from common law rights of the debtor. Insofar as the enforcement right created by § 16(b) is grounded on an independent Congressional mandate, it should not be automatically extinguished by application of a conflicting federal policy without an explicit or compelling expression by Congress that in fact such adjustment of the clashing statutory interests involved represents its intent. The Court has not found such a clear and unambiguous statement of Congressional purpose in either the Bankruptcy Code or in the Act. Thus, the Court is persuaded that the § 16(b) right of action at issue here belongs not to the bankruptcy estate, but to Schaffer, and consequently is not affected by the automatic stay pursuant

to § 362. Accordingly, it is hereby

ORDERED that Defendant's motion for a stay of this action pursuant to § 362 of ***284** the Bankruptcy Code is denied; and it is further

ORDERED that parties shall proceed to file, in accordance with a stipulated briefing schedule, their respective motions for reconsideration related to the Court's September 2, 2003 Decision and Order; and it is further

ORDERED that the parties shall continue with pre-trial preparations pursuant to the schedule previously agreed upon.

SO ORDERED

POSTAL SERVICE. Retail

P

US POSTAGE PAID
$0.05

Origin: 70123
Destination: 90012
0 Lb 6.30 Oz
Jan 25, 18
2165760023-13

1006

PRIORITY MAIL 2-Day ®

Expected Delivery Day: 01/27/2018 C004

USPS TRACKING NUMBER

9505 5141 6737 8025 1627 44

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

PRESS FIRMLY TO SEAL

ELMWOOD STATION

NEW ORLEANS LA STATION
JAN 25 2017




FROM:
John Olagues
413 Sauve Rd
River Ridge LA. 70123

RECEIVED
CLERK, U.S. DISTRICT COURT
JAN 29 2018
CENTRAL DISTRICT OF CALIFORNIA
BY

TO:
Clerk of Court
U.S. Dist Court
Spring Street Federal Courthouse
312 North Spring St.
Los Angeles, California
90012

DMG

PS00001000014

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES POSTAL SERVICE®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a